(No. 49339.-

GLEN ELLYN SAVINGS AND LOAN ASSOCIATION *et al.,* Appellees, v. A. T. TSOUMAS, Director, Illinois Department of Financial Institutions, Appellant.

*Opinion filed May 26, 1978.*

MORAN and KLUCZYNSKI, JJ., took no part.

William J. Scott, Attorney General, of Springfield (George W. Lindberg, Deputy Attorney General, and Imelda R. Terrazino, Assistant Attorney General, both of Chicago, of counsel), for appellant.

Giffin, Winning, Lindner, Newkirk, Cohen & Bodewes, of Springfield (James M. Winning, of counsel), for appellee Glen Ellyn Savings & Loan Association.

Harold B. Shore and Matthew G. Ash, of Washington, D.C. (Anne P. Jones, of counsel), for *amicus curiae* Federal Home Loan Bank Board.

MR. JUSTICE CLARK delivered the opinion of the court:

The primary question in this case is whether, under the supremacy clause of the United States Constitution (U.S. Const., art. VI), the Home Mortgage Disclosure Act of 1975 (12 U.S.C. sec. 2801 *et seq.* (1976)) ("Federal Act") has preempted the application of the Financial Institutions Disclosure Act (Ill. Rev. Stat. 1975, ch. 95, par. 201 *et seq.*) ("Illinois Act") to certain federally chartered banks and savings and loan associations operating in Illinois. The circuit court concluded that the Federal Act does preempt the application of the Illinois Act to certain federally chartered banks and savings and loan associations. Because we agree with that conclusion, we need reach no other issues, for the Illinois Act contains the following self-destruct clause:

> "If any provision of this Act *or the application thereof to any person or circumstance* is held invalid, such

> determination of invalidity shall apply to all provisions of this Act. No provision is severable." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 95, par. 208.

It is undisputed that both acts are directed toward the same general object: disclosure of the geographical distribution of the real estate securing the extension of credit by various financial institutions, with a view toward elucidating whether such institutions have arbitrarily refused to extend credit secured by real estate located in certain urban areas ("redlining"). Toward that end, the Illinois Act requires every bank, insurance company, mortgage banking company, and savings and loan association which operates or has a place of business in Illinois to file with the Director of the Illinois Department of Financial Institutions and to make publicly available the following information about its lending activity:

> "*** a statement showing for each neighborhood [zip code] which lies wholly or partially within a county having a population of more than 100,000 persons, and a statement showing for each census tract which lies wholly or partially within a county having a population of more than 100,000 persons:
>
> The number and aggregate dollar amount of written applications for, and the number granted and aggregate dollar amount of:
>
> (1) Loans secured by residential real estate;
>
> (2) mortgage loans insured under the federal National Housing Act, Title 12, United States Code, Chapter 13;
>
> (3) mortgage loans guaranteed under the provisions of the federal Veterans' Benefits Act, Title 38, United States Code, Chapter 37, Subchapter II;
>
> (4) construction loans; and
>
> (5) home improvement loans and loans made in accordance with Subchapter I, 'Housing Renovation and Modernization', of the National Housing Act, Title 12, United States Code, Chapter 13." Ill. Rev. Stat. 1975, ch. 95, par. 203.

The Federal Act, passed only a few months after and with knowledge of the Illinois Act (see H.R. Rep. No.

94–561, 94th Cong., 1st Sess. 19, reprinted in [1975] U.S. Code Cong. & Ad. News 2303, 2320) requires all depository institutions (including, *inter alia,* banks, credit unions, and savings and loan associations) which had assets greater than $10 million as of their last full fiscal year, and which maintain a home or branch office within a standard metropolitan statistical area (SMSA) to file with the appropriate Federal official and make publicly available the following information:

> "[T] he number and total dollar amount of mortgage loans which were (A) originated, or (B) purchased by that institution during each fiscal year *** itemized *** by census tracts [where practicable] ***, otherwise by zip code, for borrowers, under mortgage loans secured by property located within that standard metropolitan statistical area *** [and] for all such mortgage loans which are secured by property located outside that standard metropolitan statistical area." (12 U.S.C. 2803 (1976).)

Even a quick comparison of the two statutes reveals substantial differences in the coverage and mechanics of the two disclosure schemes. Those differences, however, are immaterial in light of the more specific treatment given the question of preemption in section 306 of the Federal Act (12 U.S.C. sec. 2805 (1976)).

> "Sec. 2805. Relation to state laws
>
> (a) This chapter does not annul, alter, or affect, or exempt any State chartered depository institution subject to the provisions of this chapter from complying with the laws of any State or subdivision thereof with respect to public disclosure and recordkeeping by depositor institutions, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency. The Board is authorized to determine whether such inconsistencies exist. The Board may not determine that any such law is inconsistent with any provision of this chapter if the Board determines that such law requires the maintenance of records with greater geographic or other detail than is required under this chapter, or that such law otherwise

provides greater disclosure than is required under this chapter.

(b) The Board may by regulation exempt from the requirements of this chapter any State chartered depository institution within any State or subdivision thereof if it determines that, under the law of such State or subdivision, that institution is subject to requirements substantially similar to those imposed under this chapter, and that such law contains adequate provisions for enforcement. Notwithstanding any other provision of this subsection, compliance with the requirements imposed under this subsection shall be enforced under—

(1) Section 1818 of this title in the case of national banks, by the Comptroller of the Currency; and

(2) Section 1464(d) of this title in the case of any institution subject to that provision, by the Federal Home Loan Bank Board."

The language of section 306 plainly states that the Federal Act is not intended to preempt the application of equally stringent, antiredlining disclosure acts to State-chartered institutions. Under the doctrine of *expressio unius exclusio alterius est* (*People ex rel. Moss v. Pate* (1964), 30 Ill. 2d 271), this language cannot be presumed to be surplusage (*Hirschfield v. Barrett* (1968), 40 Ill. 2d 224), and it thus demonstrates Congress' understanding that in the absence of such language, the Federal Act would be preemptive of similar State legislation. "The purpose of Congress is the ultimate touchstone." (*Retail Clerks International Association v. Schermerhorn* (1963), 375 U.S. 96, 103, 11 L. Ed. 2d 179, 184, 84 S. Ct. 219, 223; accord, *Malone v. White Motor Corp.* (1978), 435 U.S. 497, 504, 55 L. Ed. 2d 443, 450, 98 S. Ct. 1185, 1190.) Here, the plain language demonstrates not only Congress' understanding that the Federal Act normally would be construed to preempt the Illinois Act, but also its intention that only the regulation of State-chartered institutions be exempted from such preemption. Of

course, if construction of the plain language of section 306 of the statute led to a result which was clearly repugnant to the purpose of the statute read as a whole and in light of its history, we would find that the above-quoted statutory language was, after all, mere surplusage. (*E.g., People v. Todd* (1975), 59 Ill. 2d 534.) That is not the case here, however. Although the stated purpose of the Federal Act is "*** to provide the citizens and public officials of the United States with sufficient information to enable them to determine whether depository institutions are filling their obligations to serve the housing needs of the communities and neighborhoods in which they are located and to assist public officials in the determination of the distribution of public sector investments in a manner designed to improve the private investment environment" (12 U.S.C. sec. 2801(b) (1976)); and although subjecting federally chartered institutions to the additional requirements of the Illinois Act could only further the above-quoted purpose of the Federal Act, it is plain from the legislative history of the statute that Congress retreated somewhat from its stated purpose in order to protect the interests of certain Federal agencies. The Senate version of the Federal Act would not have preempted the application of State laws to federally chartered institutions. The House, however, apparently responding to suggestions from the *amicus curiae* in this case, the Federal Home Loan Bank Board (FHLBB) (see 121 Cong. Rec. H10,517 (daily ed. Oct. 31, 1975) (remarks of Rep. Stevens)), insisted that federally chartered institutions not be subjected to State disclosure laws. The House apparently accepted the FHLBB's reasoning that "subjecting Federally chartered institutions to State disclosure laws would threaten the dual banking system." See H. Conf. Rep. No. 726, 94th Cong., 1st Sess. 10, reprinted in [1975] U.S. Code Cong. & Ad. News 2333, 2336 ("Conference Report").

We need not agree with that reasoning to be bound by it, for the conferees on the part of the Senate reluctantly agreed to the House version, and it has become law. (See Conference Report 2336.) Accordingly, we hold that, under the supremacy clause of article VI, United States Constitution, the Federal Act has preempted the application of the State Act to federally chartered institutions subject to the Federal Act. Although the circuit court reached another issue, involving the validity of certain administrative actions taken by the Illinois Director of Financial Institutions allegedly pursuant to the State Act, we need not reach that issue, because of the aforementioned "self-destruct clause" of the State Act. Though neither party has specifically referred us to that clause (the State did however include it as part of the statutory appendix to its brief), the intent of that clause is both unmistakable and clearly applicable. Thus, we vacate as moot that portion of the circuit court's judgment which deals with the validity of the Director's actions, and, instead, amend the judgment to declare the Illinois statute invalid *in toto.*

For the foregoing reasons, the judgment of the circuit court is affirmed in part as modified and vacated in part as moot.

*Affirmed in part as modified*
*and vacated in part as moot.*

MORAN and KLUCZYNSKI, JJ., took no part in the consideration or decision of this case.