The NATIONAL STATE BANK, ELIZA-
BETH, N. J., a Banking Corporation of
the United States of America, and New
Jersey Bank (National Association), a
Banking Corporation of the United
States of America, Plaintiffs,

v.

Virginia LONG, Commissioner,
Department of Banking, State
of New Jersey, Defendant.

Civ. A. No. 77–2168.

United States District Court,
D. New Jersey.

Jan. 9, 1979.

Supplemental Opinion April 12, 1979.

Mackenzie, Welt, Duane & Lechner by Alfred J. Lechner, Jr., Elizabeth, N. J., for plaintiffs.

John J. Degnan, Atty. Gen. of the State of New Jersey by Michael E. Goldman, Deputy Atty. Gen., Trenton, N. J., for defendant.

Stanley C. Van Ness, Public Advocate of the State of New Jersey by Peter A. Buchsbaum, Asst. Deputy Public Advocate, Trenton, N. J., for amici curiae Coalition for a United Elizabeth and Hudson Alliance for Neighborhood Decision.

Salvatore Perillo, Corporation Counsel .of the City of Newark, Newark, N. J., for amicus curiae City of Newark.

## OPINION

BARLOW, Chief Judge.

This matter is currently before the Court on cross-motions for summary judgment. Fed.R.Civ.P. 56. The plaintiffs, two national banks located in New Jersey, filed this complaint on October 19th, 1977. The complaint names as defendant the Commissioner of Banking of New Jersey. On January 27th, 1978, the City of Newark, the Coalition for a United Elizabeth, and the Hudson Alliance for Neighborhood Decision filed a motion for leave to intervene as defendants. Fed.R.Civ.P. 24. In an oral opinion delivered on February 21st, 1978, this Court denied the motion to intervene but granted the three groups leave to file an amicus curiae brief.

As filed, the complaint alleges that the application of certain aspects of the New

Jersey anti-redlining[1] law, N.J.Stat.Ann. 17:16F–1 to F–11 (hereinafter referred to as the state act), and regulations promulgated thereunder, to national banks violates the supremacy clause of the United States Constitution. U.S.Const., art. VI, cl. 2. Specifically, the complaint alleges that Congress, through the enactment of the Home Mortgage Disclosure Act of 1975, 12 U.S.C. §§ 2801–09 (hereinafter referred to as HMDA), has pre-empted those aspects of the state act and regulations aimed at requiring national banks to report and disclose information concerning their residential mortgage lending activities. *See* Complaint, filed Oct. 19, 1977, at ¶¶ 30 & 31. Notwithstanding the limited allegations of their complaint, the plaintiffs, during the course of this litigation, have broadened their challenge to encompass the entire state act, not just the state act's reporting and disclosure requirements. Also, the plaintiffs have asserted that the congressional intent to pre-empt the field covered by the entire state act can be seen in the Community Reinvestment Act of 1977, 12 U.S.C. §§ 2901–05 (hereinafter referred to as CRA), as well as the HMDA. *See* Supplement Brief in Support of Plaintiffs' Motion for Summary Judgment, at ii, v, 4–5 (hereinafter cited as Plaintiffs' Supplemental Brief). Since the defendant has responded to these additional allegations,[2] they are properly before this Court even though the complaint has not been formally amended. *See* Fed.R.Civ.P. 15(b). In terms of relief, the plaintiffs' complaint seeks a judgment declaring the state act, and regulations promulgated thereunder, unconstitutional with respect to plaintiff national banks and a permanent injunction prohibiting the defendant from enforcing the state act and regulations against plaintiff national banks. Complaint, *supra*, Prayer for Relief, at ¶¶ 1–3.

The pending cross-motions for summary judgment were originally argued on April 24th, 1978. At that time the parties agreed to the Court's suggestion that we stay this decision pending the resolution of a state case challenging the state regulations on state law grounds. On June 30th, 1978, the Appellate Division of the New Jersey Superior Court upheld the state regulations in most respects. *New Jersey Bankers Association v. Commissioner of Banking*, No. A–417–77 (App.Div., June 30, 1978). Following the decision of the appellate division, the parties submitted additional briefs and the cross-motions for summary judgment were re-argued on October 18th, 1978.

After setting out the statutory framework, we will consider whether the state act and regulations, in whole or in part, have been pre-empted with respect to plaintiff national banks.

## I. THE STATUTES.

The parties to this litigation have asserted that the following three federal statutes have some impact on the issue of pre-emption: the HMDA; the CRA; and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–91f (hereinafter referred to as the ECOA). All three statutes appear to have at least some impact on the practice of redlining. After briefly describing the provisions of these three federal statutes, we will outline the terms of the state act.

The HMDA requires various "depository institutions", 12 U.S.C. § 2802(2), to maintain and publicly disclose information concerning their residential mortgage loan activity. 12 U.S.C. § 2803. The purpose of the act is to provide citizens and public officials with "sufficient information to enable them to determine whether depository institutions are filling their obligations to serve the housing needs of the communities and neighborhoods in which they are locat-

---

1. "Redlining" is the term used to describe the alleged practice of lending institutions to discriminate against older urban areas in the granting of residential mortgage loans. The discrimination may take the form of either an outright denial of the loan or a grant of the loan

on unfavorable terms. *See* Banking Law, 1977 *Ann.Survey Am.L.* 57, 57–58.

2. In fact, it appears that the defendant has agreed that the Court should rule on plaintiffs' additional allegations. *See* Plaintiffs' Supplemental Brief, at ii.

ed . . . ." 12 U.S.C. § 2801(b). The HMDA does not prohibit the practice of redlining. Enforcement of the act's reporting and disclosure requirements is entrusted to various federal financial supervisory agencies. 12 U.S.C. § 2804. The act also authorizes the Federal Home Loan Bank Board to make recommendations to Congress for additional legislation. 12 U.S.C. § 2806(b). On the issue of its relation to state law, section 306 of the HMDA states:

(a) This chapter does not annul, alter, or affect, or exempt any State chartered depository institution subject to the provisions of this chapter from complying with the laws of any State or subdivision thereof with respect to public disclosure and recordkeeping by depositor institutions, except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency. The Board is authorized to determine whether such inconsistencies exist. The Board may not determine that any such law is inconsistent with any provision of this chapter if the Board determines that such law requires the maintenance of records with greater geographic or other detail than is required under this chapter, or that such law otherwise provides greater disclosure than is required under this chapter.

(b) The Board may by regulation exempt from the requirements of this chapter any State chartered depository institution within any State or subdivision thereof if it determines that, under the law of such State or subdivision, that institution is subject to requirements substantially similar to those imposed under this chapter, and that such law contains adequate provisions for enforcement. Notwithstanding any other provision of this subsection, compliance with the requirements imposed under this subsection shall be enforced under—

(1) Section 1818 of this title in the case of national banks, by the Comptroller of the Currency; and

(2) Section 1464(d) of this title in the case of any institution subject to that provision by the Federal Home Loan Bank Board.

12 U.S.C. § 2805. The HMDA expires in 1980. 12 U.S.C. § 2809.

The CRA, like the HMDA, does not expressly prohibit redlining. Under the CRA, the "appropriate Federal financial supervisory agency", 12 U.S.C. § 2902(1), is directed to assess the record of "regulated financial institution[s]", 12 U.S.C. § 2902(2), in meeting the credit needs of the entire community. 12 U.S.C. § 2903(1). Furthermore, the appropriate federal agency is to consider such record in evaluating an institution's application for a "deposit facility". 12 U.S.C. §§ 2902(3), 2903(2). The CRA does not require that the federal agency deny an application for a deposit facility even if an institution's record of meeting the community's credit needs is poor. Unlike the HMDA, the CRA contains no express provision establishing its relationship with state law.

The ECOA has been cited by the defendant in support of her contention that Congress has not pre-empted the field of anti-redlining legislation with respect to national banks. *See* Brief in Response to Plaintiffs' Supplementary Brief, at 8–11 (hereinafter cited as Defendant's Responsive Brief). The ECOA prohibits discrimination in any credit transaction

(1) on the basis of race, color, religion, national origin, sex or marital status, or age . . . ;

(2) because all or part of the applicant's income derives from any public assistance program; or

(3) because the applicant has in good faith exercised any right under this chapter.

15 U.S.C. § 1691(a).

The ECOA creates a private right of action in an "aggrieved applicant". 15 U.S.C. § 1691e(a). While the ECOA's legislative history suggests that the act was designed to prohibit redlining, *see* Statement of Representative Wylie, 121 Cong.Rec. 16,742 (1975), the act does not expressly ban discrimination based on the geographic location of property used to secure the exten-

sion of credit. Thus, the act appears to reach redlining only if the refusal to make a mortgage loan can be shown to be based on one of the elements listed in 15 U.S.C. § 1691(a). In terms of its relation to state law, the ECOA states:

(e) Where the same act or omission constitutes a violation of this subchapter and of applicable State law, a person aggrieved by such conduct may bring a legal action to recover monetary damages either under this subchapter or under such State law, but not both. This election of remedies shall not apply to court actions in which the relief sought does not include monetary damages or to administrative actions.

(f) This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter, from complying with, the laws of any State with respect to credit discrimination, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. The Board is authorized to determine whether such inconsistencies exist. The Board may not determine that any State law is inconsistent with any provision of the subchapter if the Board determines that such law gives greater protection to the applicant.

(g) The Board shall by regulation exempt from the requirements of sections 1691 and 1691a of this title any class of credit transactions within any State if it determines that under the law of that State that class of transactions is subject to requirements substantially similar to those imposed under this subchapter or that such law gives greater protection to the applicant, and that there is adequate provision for enforcement. . . .

15 U.S.C. § 1691d(e), (f) & (g).

The state act at issue in this case contains provisions both that require lending institutions to report and disclose information concerning their residential mortgage loan activities and that prohibit the practice of redlining. The state act's reporting and disclosure requirements are contained in sections 4 through 6, N.J.Stat.Ann. 17:16F–4 to F–6. On its face, section 4 of the state act requires that the reporting and disclosure requirements of the state act be consistent with the requirements of section 304 of the HMDA, 12 U.S.C. § 2803. See N.J.Stat.Ann. 17:16F–4 (last paragraph). The defendant has argued, however, that she has the authority to promulgate regulations requiring more detailed reporting and disclosure in order to give substance to the state act's prohibitory requirements. The appellate division has affirmed the defendant's interpretation. See New Jersey Bankers Association, supra, slip op. at 6–8. Thus, as it currently stands, the reporting and disclosure requirements of the state act and of the HMDA differ substantially. See id. at 7; compare 12 C.F.R. § 203.4 with N.J.A.C. 3:1–9.4.

The state act's prohibitory requirements are contained in sections 3 and 7, N.J.Stat. Ann. 17:16F–3 & F–7, and, to a certain degree, in sections 8 through 11, N.J.Stat. Ann. 17:16F–8 to F–11. Section 3, in part, prohibits depository institutions from discriminating on any basis not supported by a reasonable analysis of the lending risks associated with an applicant or by the condition of property proposed as security. N.J. Stat.Ann. 17:16F–3. Section 7 provides a private right of action in any applicant who has been discriminated against in violation of section 3. N.J.Stat.Ann. 17:16F–7. Sections 8 through 11 deal, in general terms, with the authority of the defendant commissioner. Under section 8, the defendant has the power to investigate "any matter pertaining to this act". N.J.Stat.Ann. 17:16F–8. Presumably, this power includes investigations of violations of section 3 as well as violations of the state act's reporting and disclosure requirements. Section 9 gives the defendant the power to issue cease and desist orders for violations of any provision of the act. N.J.Stat.Ann. 17:16F–9. Again, section 9 appears to encompass violations of the prohibitory requirements of section 3 as well as the reporting and disclosure requirements of sections 4 through 6. Section 10 deals with the penalties to be imposed for violations of a cease

and desist order. N.J.Stat.Ann. 17:16F–10. Finally, section 11 empowers the defendant to issue regulations "for the proper operation and enforcement of this act". N.J. Stat.Ann. 17:16F–11.

## II. LEGAL DISCUSSION.

██ In any pre-emption case, the intent of Congress is controlling. *E. g., Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978). The intent of Congress to pre-empt an area may be either express or implied. *See, e. g., Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978). Where a particular federal statute contains a provision expressly stating the statute's relationship with state law, *see, e. g.,* HMDA § 306, 12 U.S.C. § 2805, the intent of Congress to pre-empt a field often appears in the text and legislative history of such provision. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). In the absence of such a provision, however, the court's task is the more difficult one of determining whether, in the first instance, the particular federal statute or statutes reveal an implied intent to pre-empt a field. The Supreme Court has also indicated that, whenever possible, a court should reconcile the operation of both federal and state schemes with one another rather than hold the state scheme completely invalid. *E. g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117, 127, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973).

The foregoing principles suggest that the validity of the state act's reporting and disclosure provisions and the validity of the state act's prohibitory provisions should be analyzed separately. This is so because, in our view, the validity of the former depends upon the scope of section 306 of the HMDA, 12 U.S.C. § 2805, whereas the validity of the latter depends upon the presence of a congressional intent, implied from the HMDA and the CRA in their entirety, to pre-empt the prohibition of redlining.

### A. *Validity of State Act's Reporting and Disclosure Provisions.*

██ Section 306 of the HMDA, 12 U.S.C. § 2805, does not specifically state that national banks are exempt from state reporting and disclosure laws. Nevertheless, we agree with the conclusion of the Illinois Supreme Court that section 306 demonstrates the intent of Congress to pre-empt state reporting and disclosure laws with respect to national banks. *Glen Ellyn Savings and Loan Association v. Tsoumas*, 71 Ill.2d 493, 17 Ill.Dec. 811, 377 N.E.2d 1, *cert. denied*, ——— U.S. ———, 99 S.Ct. 311, 58 L.Ed.2d 320 (1978). Any other conclusion would have the anomalous result of subjecting state banks to only state disclosure laws in certain circumstances but subjecting national banks to state and federal disclosure laws in all circumstances.

Furthermore, this conclusion is clearly supported by the legislative history of section 306 of the HMDA, 12 U.S.C. § 2805. The HMDA originated as H.R. 10024 and S. 1281. The Senate bill, as originally passed, contained the following provision that eventually became section 306:

(a) This Act does not annul, alter, or affect, or exempt any *person* subject to the provisions of this Act from complying with the laws of any State or subdivision thereof with respect to public disclosure and recordkeeping by depositor institutions  .  .  .  .

(b) The Board may by regulation exempt from [the] requirements of this Act *any depository institution* within any State or subdivision thereof if it determines that, under the laws of such State or subdivision, that institution is subject to requirements substantially similar to those imposed under this Act  .  .  .  .

S. 1281, 94th Cong., 1st Sess. § 6 (1975), *reprinted in* 121 Cong.Rec. 27624 (1975) (emphasis added).

The original House bill contained a virtually identical provision. H.R. 10024, 94th Cong., 1st Sess. § 306 (1975), *reprinted in* 121 Cong. Rec. 34563 (1975) (same as Senate bill except that the word "Title" is substituted for the word "Act" in subsection (a)). In discussing this provision, the report of the House Banking, Currency and Housing Committee stated:

To insure compliance by Federal institutions with stricter state disclosure statutes, H.R. 10024 makes it clear that Federal institutions must comply with state law and regulations, even if it should be inconsistent with Federal law by requiring maintenance of records with greater geographic or other detail, or provide for greater disclosure than is required by Federal law. H.R. 10024 would apply to all financial institutions, with the proviso that state law would take precedence in states with "substantially similar" requirements, because your committee recognizes, in the final analysis, solutions to the problems of urban disinvestment are going to come at the local and state level.

H.R.Rep.No.94–561, 94th Cong., 1st Sess. 19, *reprinted in* [1975] U.S.Code Cong. & Admin.News, pp. 2303, 2320–21. *See also* S.Rep.No.94–187, 94th Cong., 1st Sess. 13 (1975).

During its course through Congress, however, the above-quoted provision was altered by the substitution of the phrase "state chartered depository institution" for the word "person" in subsection (a) and by the insertion of the phrase "state chartered" before the phrase "depository institution" in subsection (b). These changes reflect Congress' decision to prevent the application of state reporting and disclosure laws to federally chartered institutions. *See* H.R.Conf.Rep.No.94–726, 94th Cong., 1st Sess. 9–10, *reprinted in* [1975] U.S.Code Cong. & Admin.News, pp. 2333, 2336; 121 Cong.Rec. 34564 (1975) (remarks of Rep. Stephens); *Glen Ellyn, supra,* 17 Ill.Dec. at 813–814, 377 N.E.2d at 3–4. *See also* text at pages 1074–1075, *infra.*

The defendant, and the amici curiae, do not appear to seriously contest the conclusion that section 306 of the HMDA, 12 U.S.C. § 2805, pre-empts the application of state disclosure laws to national banks to some extent. *See* Defendant's Responsive Brief, at 7–8; Supplemental Brief Amicus Curiae, at 2. Rather, the defendant's position appears to be that the scope of such pre-emption is restricted to state laws, such as Illinois', which are *purely* reporting and

disclosure laws. Since the New Jersey statute prohibits redlining, as well as requires reporting and disclosure, the defendant argues that reporting and disclosure deemed necessary for the state to enforce the prohibition are not pre-empted. *See* Brief in Support of Defendant's Motion for Summary Judgment, at 11–12 (hereinafter cited as Defendant's Brief). Thus, in the defendant's view, the most that can be pre-empted by section 306 of the HMDA, 12 U.S.C. § 2805, is section 4 of the state act, N.J. Stat.Ann. 17:16F–4. Furthermore, in the defendant's view, regulations requiring national banks to report and disclose information, promulgated pursuant to other sections of the state act as a means of furthering the act's prohibition of redlining, are not pre-empted.

The defendant's view of the scope of section 306 of the HMDA is too restrictive. In *Rice, supra,* the Supreme Court stated that when a federal statute contains an express provision dealing with pre-emption, the "test . . . is whether the matter on which the State asserts the right to act is in any way regulated by the Federal Act. If it is, the federal scheme prevails though it is a more modest, less pervasive regulatory plan than that of the State." *Rice, supra,* 331 U.S. at 236, 67 S.Ct. at 1155. The defendant and the amici curiae have not cited any case which supports their apparent contention that the pre-emptive effect of a federal statute can be avoided where a state statute, touching the same field, has a different purpose than the federal statute. In our view, to put it bluntly, disclosure is disclosure, regardless of what the purpose of the disclosure may be.

We do agree, however, with the defendant's position that the scope of section 306 of the HMDA, 12 U.S.C. § 2805, is limited to state reporting and disclosure laws. The legislative history of section 306 indicates that it was intended to have such a limited impact. The House Conference Committee Report accompanying the HMDA contains the following language:

The Senate conferees regard the House provision concerning Federal pre-emption

as an exception to the pre-emption provisions of other consumer finance laws, including the Truth in Lending and Fair Credit Billing Acts, which contain provisions similar to Senate provisions of S. 1281.

In the case of mortgage disclosure, however, the conferees on the part of the House strongly believe that subjecting a Federally chartered institution to state law would threaten the dual banking system.

*With the understanding that this provision goes only to the narrow area of geographical disclosure of mortgage lending statistics, the Senate conferees agreed to the House provision, which is included in the conference report.*

H.R.Conf.Rep.No.94–726, 94th Cong., 1st Sess. 10, *reprinted in* [1975] U.S.Code Cong. & Admin.News, pp. 2333, 2336 (emphasis added).

Furthermore, in describing the amended bill just prior to the Senate's favorable vote on it, Senator Proxmire, Chairman of the Banking, Currency and Urban Affairs Committee and floor manager of the bill, stated:

The conferees also agree to the House provision regarding Federal pre-emption, at the recommendation of the regulatory agencies. The bill passed by the Senate provided that in the event that a State enacted its own mortgage disclosure legislation and that legislation provided a greater degree of disclosure than this act, a waiver could be obtained from the Federal law and all depository institutions doing business in that State would comply with State law.

Subsequently, at the suggestion of the Federal Home Loan Bank Board, the House modified that language to provide that federally chartered institutions would always be subject to the Federal

law, but that State chartered institutions in States with mortgage disclosure laws could be granted a waiver if the State law provided for equal or greater disclosure. Although it is my belief that in certain areas of consumer legislation it is always useful to let the States serve as laboratories and that we should not preempt more comprehensive State legislation, we did agree to the House provision. *We understand, however, that this language applied only to the mortgage disclosure provided in S. 1281, and does not pre-empt States from taking action to promote reinvestment in other ways.*

121 Cong.Rec. 40606 (1975) (emphasis added).

Thus, we find that sections 4 through 6 of the state act, N.J.Stat.Ann. 17:16F–4 to F–6 are pre-empted with respect to plaintiffs by virtue of section 306 of the HMDA, 12 U.S.C. § 2805. In addition, any regulations that the defendant has, or may in the future promulgate, pursuant to any other sections of the state act requiring the plaintiffs to report and disclose home mortgage loan information are also pre-empted by section 306 of the HMDA, 12 U.S.C. § 2805.[3]

B. *Validity of State Act's Prohibitory Provisions.*

As we indicated above, the plaintiffs contend that Congress, in addition to pre-empting the area of home mortgage loan reporting and disclosure, has prohibited the state from enforcing legislation prohibiting the practice of redlining against national banks. *See* text at pages 1069–1070, *supra.* In light of our conclusion that section 306 of the HMDA, 12 U.S.C. § 2805, pre-empts only state reporting and disclosure laws, *see* text at pages 1074–1075, *supra,* this aspect of the plaintiffs' case must rest on their ability to prove an implied congres-

---

**3.** We have not addressed the validity of specific regulations promulgated by the defendant pursuant to the state act. We direct the attorneys for the plaintiffs and defendant to confer in an attempt to agree upon which regulations are invalidated by the Court's reasoning. The Court will determine the validity of any particular regulation concerning which the parties

are unable to agree. The proposed form of order, see text at page 1078, *infra,* should refer to specific regulations as well as the specific sections of the state act identified in this opinion. As for the validity of the remaining sections of the state act, *see* text at pages 1077-1078 and n. 6, *infra.*

sional intent to pre-empt state legislation aimed at prohibiting redlining.

The United States Supreme Court has indicated that a congressional intent to pre-empt an area may be implied in four ways.

> [First,] the scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. . . . [Second,] the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. . . . [Third,] the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. . . . [Fourth,] the state policy may produce a result inconsistent with the objective of the federal statute.

*Rice, supra,* 331 U.S. at 230, 67 S.Ct. at 1152 (citations omitted). *Accord, e. g., Ray, supra,* 435 U.S. at 157–58, 98 S.Ct. 988; *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 633, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973).

The Supreme Court has also indicated that it "is generally reluctant to infer pre-emption". *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 132, 98 S.Ct. 2207, 57 L.Ed.2d 91 (U.S.1978).

In this case, the plaintiffs have not clearly identified which of the preceding four methods they are relying on to support their contention that the state act's prohibitory requirements are pre-empted. It seems to the Court, however, that the plaintiffs' arguments basically fall under the second and fourth methods. Specifically, the plaintiffs appear to be arguing that the federal interest in national banks is so dominant that the federal system for combating redlining, such as it is, should be assumed to preclude any state regulation on the subject. *See* Plaintiffs' Brief, at 10–12; Plain-

tiffs' Supplemental Brief, at 12. Alternatively, and perhaps more vigorously, the plaintiffs argue that enforcing the state act's prohibitory requirements will produce a result inconsistent with the objectives of the HDMA and the CRA. *See* Plaintiffs' Supplemental Brief, at 4–12.

██ We can not conclude that the federal interest in the national banking system requires the pre-emption of the state act's prohibitory requirements. National banks are subject to the operation of state law except where state law "expressly conflict[s] with the laws of the United States or frustrate[s] the purpose for which the national banks were created, or impair[s] their efficiency to discharge the duties imposed upon them by the law of the United States". *McClellan v. Chipman,* 164 U.S. 347, 357, 17 S.Ct. 85, 87, 41 L.Ed. 461 (1896). *Accord, e. g., Anderson National Bank v. Luckett,* 321 U.S. 233, 248, 64 S.Ct. 599, 88 L.Ed. 692 (1944); *Davis v. Elmira Savings Bank,* 161 U.S. 275, 283, 16 S.Ct. 502, 40 L.Ed. 700 (1896). The plaintiffs in this case have not demonstrated that the state act's prohibitory requirements expressly conflict with federal law, frustrate the purposes of national banks, or impair the efficiency of national banks.[4] We perceive little difference between the application of the state act's prohibitory requirements to national banks in this case and the application of any other state anti-discrimination law to national banks. Indeed, on at least one occasion, Congress has specifically declared that national banks are subject to state laws aimed at discrimination in credit transactions. *See* 15 U.S.C. § 1691d(e)–(g), *quoted in* text at pages 1071–1072, *supra.* Presumably, Congress would never have enacted such a provision if it feared that subjecting national banks to state anti-discrimination laws was a threat to the federal interest underlying the national banking system.

---

4. *Marquette National Bank v. First of Omaha Service Corp.,* —— U.S. ——, 99 S.Ct. 540, 58 L.Ed.2d 534 (U.S.1978), is a recent example of a case in which the Supreme Court found that a state statute was pre-empted by virtue of the dominant federal interest in the national banking system. In that case, the court held that a Minnesota law governing interest rates was inapplicable to out-of-state national banks because it conflicted with 12 U.S.C. § 85 and because it frustrated the purposes of national banks.

■ The plaintiffs' second argument—namely, that application of the state act's prohibitory requirements will produce a result inconsistent with the HMDA and the CRA—is more substantial. The plaintiffs' argument is basically that the legislative histories of the HMDA and the CRA indicate that these acts are preliminary steps in Congress' fight against redlining. In the plaintiffs' view, these acts are designed to discover whether the practice of redlining exists. If the practice does exist, then Congress may enact further legislation which, like the state act, specifically prohibits redlining. *See* Plaintiffs' Supplemental Brief, at 4–5 (discussing legislative history of the HMDA); 8–12 (discussing legislative history of the CRA); & 15. Thus, the plaintiffs conclude, upholding the state act's prohibitory requirements would be inconsistent with Congress' current desire to engage in little more than information gathering.

The difficulty we have with the plaintiffs' argument is that it has, at best, only a peripheral impact on the issue of pre-emption. Any congressional prohibition of redlining will more than likely have an impact on every lending institution in the nation. It may well be that Congress is reluctant to enact such sweeping regulation in the absence of affirmative evidence that the practice of redlining exists. That reluctance, however, does not necessarily mean that Congress intended to preclude individual states from taking more direct measures to combat redlining and from making those measures applicable to national banks.

Indeed, the statement of Senator Proxmire with respect to section 306 of the HMDA, 12 U.S.C. § 2805, quoted in the text at page 13, *supra,* suggests that Congress did not wish to pre-empt states from taking additional steps to combat redlining. As we indicated above, Senator Proxmire, in discussing the House amendment to section 306, stated: "We understand, however, that this language applied only to the mortgage disclosure provisions in S. 1281 and does not pre-empt States from taking action to promote reinvestment in other ways." 121 Cong.Rec. 40606 (1975). It may be that Senator Proxmire's statement means that states are free to take additional steps with respect to only state chartered institutions. However, since Senator Proxmire was discussing an amendment which specifically pre-empted the application of state law to federally chartered institutions, *see* text at pages 1073–1075, *supra,* it is more likely that the statement means that states are free to take such steps with respect to all lending institutions, national as well as state, located within their borders. Given this statement, and the lack of any other affirmative indication of congressional intent with respect to the pre-emption issue, we can not conclude that the plaintiffs have shown that the "clear and manifest purpose of Congress", *Rice, supra,* 331 U.S. at 230, 67 S.Ct. at 1152, was to exempt national banks from state laws prohibiting the practice of redlining.[5]

Thus, we conclude that the state act's prohibitory requirements are not pre-empted with respect to the plaintiff national banks. This conclusion means that sections 3 and 7 of the state act, N.J.Stat.Ann. 17:16F–3 & F–7, are constitutional in their

---

5. The case of *Upholstered Furniture Action Council v. California Bureau of Home Furnishings,* 415 F.Supp. 63 (E.D.Cal.1976), relied upon by the plaintiffs, *see* Plaintiffs' Supplemental Brief, at 12–14, does not alter our conclusion. In that case, the district court held that a state statute dealing with the flammability of upholstered furniture was pre-empted by virtue of the Flammable Fabrics Act, 15 U.S.C. §§ 1191–204, notwithstanding the fact that no regulations implementing the federal act had been promulgated. The court, relying on *Burbank, supra,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547, reasoned that Congress, in enacting the federal act, "specifically wanted to avoid multiple regulation of manufacturers . . . [because] the character of the textile industry requires that flammability standards be uniform throughout the country". 415 F.Supp. at 65. In this case, no such congressional intent appears with respect to the prohibition of redlining, nor does the "character of the . . . industry" require uniformity. It may well be that the appropriate response to redlining should vary depending upon the area of the country involved. For example, areas with many older urban centers, such as the northeast, may require stronger prohibitory measures than areas with fewer such urban centers.

entirety. The validity of sections 8, 9, and 10 of the state act, N.J.Stat.Ann. 17:16F–8, F–9, and F–10 present more difficult problems because in these sections the state act's reporting and disclosure requirements and the state act's prohibitory requirements overlap to a certain extent. In our view, section 8 must be declared unconstitutional in its entirety. Clearly, the defendant can not conduct "investigations", pursuant to section 8, of matters dealing with the state act's reporting and disclosure requirements. Furthermore, permitting the defendant to "investigate" violations of section 3, pursuant to section 8, would inevitably result in the disclosure, on a case by case basis, of information which we have determined the defendant is precluded from obtaining from the plaintiffs on a general basis. In relation to section 9 of the state act, N.J.Stat. Ann. 17:16F–9, however, we see nothing to prohibit the defendant from issuing cease and desist orders for any violations of section 3 that can be discovered through the information plaintiffs are required to disclose pursuant to the HMDA. Similarly, the penalty provisions of section 10, N.J. Stat.Ann. 17:16F–10, are valid to the extent that plaintiffs may violate any order requiring them to cease and desist from violations of section 3.[6]

## CONCLUSION

In summary, we have held the following: First, sections 4, 5, 6, and 8 of the state act, N.J.Stat.Ann. 17:16F–4, F–5, F–6, & F–8, are unconstitutional in their entirety with respect to the plaintiffs; second, sections 1, 2, 3, 7, and 11 of the state act, N.J.Stat. Ann. 17:16F–1, F–2, F–3, F–7, and F–11, are constitutional in their entirety with respect to plaintiffs; and, third, sections 9 and 10 of the state act, N.J.Stat.Ann. 17:16F–9 & F–10, are constitutional in part and unconstitutional in part with respect to plaintiffs. As for the validity of the state regulations, *see* n. 3, *supra*. A permanent injunction will be entered prohibiting the

defendant from enforcing the state act and state regulations in accordance with this opinion.

## SUPPLEMENTAL OPINION

### CLARKSON S. FISHER, Chief Judge.

This matter is currently before the Court for the purpose of settling the form of order to be entered pursuant to the opinion rendered by Chief Judge George H. Barlow, prior to his death. Judge Barlow found that the New Jersey anti-redlining law, N.J.Stat.Ann. 17:16F–1 to F–11 (hereinafter referred to as the state act), was constitutional in part and unconstitutional in part with respect to the plaintiffs national banks. As part of his opinion, Judge Barlow directed the parties to confer in an effort to agree which state regulations, promulgated by the defendant Commissioner of Banking pursuant to the state act, were invalidated by the Court's reasoning. *The National State Bank v. Long,* at 1075 n. 3 (D.N.J., 1979). After conferring with each other, the parties submitted proposed forms of order and supporting memoranda.

At the outset, it appears that the parties may have misconstrued both the nature of Judge Barlow's directive to confer concerning the state regulations and the function of this Court in reviewing state regulations. In their proposed forms of order, both parties refer to annexed copies of regulations. The annexed regulations are *not* the current state regulations. Rather, the annexed regulations amend, in differing language, the current state regulations. Each party believes that its particular amendments will bring various state regulations into conformity with the reasoning expressed in Judge Barlow's opinion. Thus, by adopting either of the proposed forms of order, this Court would be, in effect, ordering the amendment of the state regulations.

I do not believe Judge Barlow anticipated that the parties would attempt to *amend*

---

**6.** We see no reason to declare any aspect of §§ 1, 2, or 11 of the state act, N.J.Stat.Ann. 17:16F–1, F–2, & F–11, unconstitutional.

These sections, by themselves, do not require any bank, state or national, to do anything.

the existing state regulations within the confines of this law suit. Judge Barlow's opinion required the parties to do no more than confer concerning the validity of the *existing* state regulations with respect to the plaintiffs. Indeed, this Court does not possess the authority to actually amend the existing state regulations, regardless of whether the amendments are submitted by the plaintiffs or defendant to this law suit.

By adopting amendments proposed by the plaintiffs, the Court would be ordering the defendant, a state administrative official, to amend the language of state regulations in ways which she may not approve. In effect, the Court would be drafting state regulations. While this Court can decide whether language contained in a particular state regulation is valid or invalid, I know of no authority that permits this Court to actually *write* a state regulation.

Nor is it appropriate for this Court to adopt amendments proposed by the defendant to the existing state regulations. State law appears to impose numerous procedural requirements for the amending of the state regulations involved in this case. *The New Jersey Bankers Association v. Commissioner of Banking,* No. A–417–77, slip op., at 2–3 (N.J.Super.Ct., App.Div., filed June 30, 1978); *see e.g.,* N.J.Stat.Ann. 17:1–8.2. Thus, even if this Court adopted the defendant's proposed amendments, they would not, as a matter of state law, be finally effective without additional state administrative proceedings. In these circumstances, I seriously doubt whether this Court could, consistent with Article III of the United States Constitution, decide the validity of defendant's proposed regulations.

This Court's function is limited to deciding whether the United States Constitution, as interpreted in Judge Barlow's opinion, permits the application of *existing* state regulations to the plaintiffs. It may well be that the defendant, in light of this Court's decision, will decide to redraft the

state regulations in order to achieve a more coherent regulatory scheme. Furthermore, the defendant, in order to avoid future litigation, may wish to consult with the plaintiffs and other interested members of the public during the redrafting process.[1] The defendant can not, however, accomplish the redrafting of the state regulations simply by having this Court append amendments to an order.

■  With these principles in mind, I will turn to the question of the applicability of the existing state regulations to the plaintiffs. Sections 9.1, 9.2, 9.3, and 9.22 of the state regulations, N.J.A.C. 3:1–9.1 to 9.3 & 9.22 do not, by themselves, have an impact on any lending institution. Thus, there is no reason to declare unconstitutional or to enjoin the enforcement of sections 9.1, 9.2, 9.3, and 9.22. *See The National State Bank, supra,* at 1078 n. 6.

■  Sections 9.4 to 9.8 of the state regulations, N.J.A.C. 3:1–9.4 to 9.8, implement the state act's reporting and disclosure requirements. Under the reasoning contained in Judge Barlow's opinion, those regulations are clearly invalid as applied to the plaintiffs. *See The National State Bank, supra,* at 1073–1075.

Section 9.9 of the state regulations, N.J.A.C. 3:1–9.9, is merely a restatement of section 3 of the state act. N.J.Stat.Ann. 17:16F–3. As such, section 9.9 is clearly valid. *See The National State Bank, supra,* at 1077.

■  Sections 9.10 to 9.22 of the state regulations, N.J.A.C. 3:1–9.10 to 9.22, establish the procedures to be employed by the defendant, and other state administrative officials, in enforcing the provisions of the state act. The enforcement of the state act's reporting and disclosure requirements and the state act's prohibitory requirements is currently commingled in sections 9.10 to 9.22. Thus, in their present form, sections 9.10 to 9.22 are invalid with respect to the plaintiffs. This Court expresses no opinion

---

1. If the state regulations are in fact amended and if the plaintiffs feel that such amendments are invalid, the plaintiffs may be able to apply

to this Court for a modification of the injunction. *See generally* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2961 (1973).

as to whether the defendant could, consistent with her authority under the state act, redraft sections 9.10 to 9.22 in such a way as to extricate the administrative enforcement of the state act's prohibitory requirements from the administrative enforcement of the state act's reporting and disclosure requirements in a manner consistent with Judge Barlow's opinion.