**WISCONSIN LEAGUE OF FINANCIAL INSTITUTIONS, LTD., a Wisconsin corporation; First Federal Savings & Loan Association of La Crosse, a federally chartered mutual savings & loan association; First Federal Savings Bank of Madison, a federally chartered savings bank, and Universal Savings Bank, F.A., a federally chartered savings bank, Plaintiffs,**

**v.**

**Richard E. GALECKI, Commissioner of Banking, State of Wisconsin; and Donald J. Hanaway, Attorney General, State of Wisconsin, in their official capacities, Defendants.**

No. 88–C–735–S.

United States District Court, W.D. Wisconsin.

Feb. 14, 1989.

William J. Mulligan & Alyson K. Sloan, Mulcahy & Wherry, S.C., Milwaukee, Wis., for plaintiffs.

Peter Cannon, Asst. Atty. Gen., State of Wis., Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiffs, who are or represent federally chartered savings institutions, bring this action for declaratory judgment and injunctive relief against defendants Richard E. Galecki and Donald J. Hanaway in their official capacities as the Commissioner of Banking and Attorney General for the State of Wisconsin. Plaintiffs seek to bar the application of portions of 1987 Wisconsin Act 359 and 1987 Wisconsin Act 360, which regulate tax escrow accounts maintained in conjunction with mortgage loans administered by the plaintiff institutions and require certain disclosures relating to such loans.

This action is currently before the court on plaintiffs' motion for summary judgment. Jurisdiction is based upon 28 U.S.C. sec. 1331. The parties have stipulated to the following facts.

### FACTS

Plaintiff Wisconsin League of Financial Institutions, Ltd. is a Wisconsin corporation with principal offices in Wisconsin. It has as members 17 federally chartered savings and loan associations and three federally chartered savings banks.

The named plaintiff federal financial institutions are federally chartered institutions and engaged in the originating, administering and servicing of residential real estate mortgage loans as well as the sale of such loans in the secondary mortgage

market. In conducting their residential mortgage loan business, the plaintiffs regularly administer escrow accounts associated with those loans.

As a condition of operation under their federal charters, plaintiff financial institutions are subject to the regulation of the Federal Home Loan Bank Board. The Federal Home Loan Bank Board, pursuant to statutory authority granted by the laws of the United States, has issued regulations relating to the operations of federal associations, including federally chartered mutual savings and loan associations and federally chartered savings banks, pursuant to the authority of sec. 5(a) of the Home Owners' Loan Act of 1933, 12 U.S.C. sec. 1464(a), as amended.

On April 22, 1988, the Wisconsin legislature enacted 1987 Wisconsin Act 359 and 1987 Wisconsin Act 360 which amended Ch. 138, Wis.Stats., requiring *inter alia:*

  a. that savings banks or mutual savings and loan associations which originate loans after January 31, 1983, and require an escrow to assure payment of taxes or insurance shall pay interest on the outstanding principal on the balance of the escrow of not less than 5.25% per year, unless the escrow funds are held by a third party in a non-interest bearing account (1987 Wisconsin Act 359, Sec. 1, and 1987 Wisconsin 360, Sec. 1, amending Sec. 138.052(5)(a), Wis.Stats.), which has been in effect since November 1, 1981.

  b. that the savings bank or mutual savings and loan association which requires an escrow to assure payment of property taxes shall provide a borrower with a written notice prior to the loan closing stating the various ways in which the borrower may require the escrow agent to make payments (1987 Wisconsin Act 359, Sec. 2, and 1987 Wisconsin Act 360, Sec. 1m, creating Sec. 138.052(5m), Wis. Stats.);

  c. that a savings bank or mutual savings and loan association which requires an escrow to assure the payment of property taxes shall provide written notice to borrowers of loans originated before the effective date of the statute with respect to the optional methods under which the borrower can require the escrow agent to make the payments (1987 Wisconsin Act 359, Sec. 2, and 1987 Wisconsin Act 360, Sec. 1m, creating Sec. 138.052(5m), Wis.Stats.);

  d. that disclosure shall be made in writing to a loan applicant of the reasons for adverse action on the application (1987 Wisconsin Act 359, Sec. 3, creating Sec. 138.052(7e), Wis.Stats.);

  e. that a lender shall notify a borrower in writing, if on or after the effective date of the statute, the payment, collection, or other loan or escrow services related to the loan are sold or released (1987 Wisconsin Act 359, Sec. 4 and 1987 Wisconsin Act 360, Sec. 1m, creating Sec. 138.052(7m), Wis.Stats.);

  f. that time limits are established for response by a lender to a borrower's inquiry (1987) Wisconsin Act 359, Sec. 5, creating Sec. 138.052(7s), Wis. Stats.); and

  g. that a lender will be liable to a borrower in the amount of $500 plus actual damages, costs and reasonable attorney fees for violation of any of the foregoing provisions (1987 Wisconsin Act 359, Sec. 6, and 1987 Wisconsin Act 160, Sec. 2, amending Sec. 138.052(12), Wis.Stats.).

The administration and enforcement of the foregoing provisions is charged to the defendant Commissioner of Banking for the State of Wisconsin, Richard E. Galecki.

### MEMORANDUM

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions, and the court has reviewed such evidence in the light most favorable to the non-movant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Rule 56(c), Federal Rules of Civil Procedure.

A factual dispute is material only if its resolution might affect the outcome of the suit under the governing law. A factual dispute is genuine only if a reasonable fact finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Under Rule 56(e), it is the obligation of the non-moving party to set forth specific facts showing that there is a genuine issue for trial.

The parties agreed at the time of the preliminary pretrial conference that genuine issues of material fact did not exist and that the matter could be decided on summary judgment. Defendants in their brief assert that material factual disputes exist concerning plaintiffs' past and current practices regarding compliance with state law and the hardship suffered by plaintiffs because of the Wisconsin statutes under consideration. The court does not find these factual disputes to be material for they do not affect the determination of whether federal law preempts the Wisconsin statute. Accordingly, the court finds no genuine issue of material fact exists and applies the undisputed facts to the law of preemption.

■ Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, federal law preempts state law where Congress so intends. For purposes of determining Congressional intent, federal regulations enacted under authority granted by Congress are entitled to the same preemptive effect as a federal statute. *Fidelity Federal Savings & Loan Association v. De La Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). The issue before the court is whether the regulations adopted by the Federal Home Loan Bank Board were intended to preempt state laws governing escrow accounts and disclosures of federal institutions in connection with mortgage loans and, if so, whether the regulations are within the scope of the Board's authority. *Id.* at 154, 102 S.Ct. at 3023.

■ Preemption may be by an express statement within a regulation or may be implicitly contained in the structure and purpose of the regulations. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). In addition to explicit preemption, the court in *Louisiana Public Service Commission v. FCC,* 476 U.S. 355, 368–369, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986) identified five circumstances which support a finding of implicit preemption: 1) where there is outright or actual conflict between federal and state law; 2) where compliance with both federal and state law is in effect physically impossible; 3) where there is implicit in federal law a barrier to state regulation; 4) where an entire field of regulation has been occupied leaving no room for states to supplement federal law; and 5) where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

In this case the court finds that preemption is both explicit and implicit. Preemption is explicit by virtue of the provisions of 12 C.F.R. § 545.2 which expressly preempts any state law governing the operations of a federal savings institution. Preemption is implicit because the Wisconsin law under consideration stands as an obstacle to the express desire of the FHLBB to maintain flexibility for the institutions it governs.

*Explicit Pre-emption*

■ 12 C.F.R. § 545.2, which was adopted after the Supreme Court's decision in *Fidelity Federal,* provides as follows:

> The regulations in this Part 545 are promulgated pursuant to the plenary and exclusive authority of the Board to regulate all aspects of the operations of Federal associations, as set forth in section 5(a) of the Home Owners' Loan Act of 1933, 12 U.S.C. 1464, as amended. *This exercise of the Board's authority is preemptive of any state law purporting to address the subject of the operations of a Federal association.*

There is nothing ambiguous about the intent of the Federal Home Loan Bank Board to preempt state laws governing operations of federal savings institutions.

There is also no issue as to whether escrow account and loan disclosures fall within the realm of the operations of federal associations. In *Fidelity Federal,* 458 U.S. at 167 n. 20, 102 S.Ct. at 3029 n. 20, the court explicitly recognized the terms of loan instruments, including escrow accounts, as part of the operations of federal associations. Finally, the structure of the present regulations makes it apparent that the preemption expressed in § 545.2 extends to all operations of federal savings institutions whether or not the regulations substantively regulate that aspect of the operations. 12 C.F.R. § 545.1 provides:

> A federal association may exercise all authority granted it by the Home Owners' Loan Act of 1933, 12 U.S.C. 1464, as amended, and its charter and bylaws, whether or not implemented specifically by bank board regulation, subject to the limitations and interpretations contained in this Part.

The comments of the Federal Home Loan Bank Board at the time of the adoption of the rules render the Board's intent unambiguous.

> Current Part 545 is based upon the premise that the investment authority of the HOLA must be implemented expressly by regulation. Many of the provisions of the statute, however, do not require regulatory action. In order to grant associations the maximum flexibility to exercise the authorities granted by the HOLA, the Board has determined to revise the general approach to regulating investment activities of federal associations. Accordingly, *Part 545 now addresses the authority of associations only to limit, interpret or recognize incidental authority. Federal associations may exercise all of the authority granted by HOLA subject only to limitations contained in the regulations.*

48 Fed.Reg. 23,032 (1983).

Concerning preemption the Board stated that it "desires to make clear its views on the preemptive nature of the authority conferred on federal associations by the HOLA and the Board's regulations." *Id.*

Defendants' contention that the Bank Board has "removed itself" from the regulation of escrow accounts is entirely inconsistent with the structure of the regulations. The regulations contemplate that full authority and flexibility is granted unless expressly limited. Under the interpretation advanced by defendants the Bank Board would be required to affirmatively express by regulation every power held by a federal institution or risk restrictions by the states. Such an interpretation is based upon neither reason nor common sense.

The explicit preemption language, in the context of regulations which presume that the absence of a provision limiting authority means that an association may exercise full authority, is clearly intended to cover those areas where no limitation is imposed. Accordingly, the court finds that the Federal Home Loan Bank Board has expressly preempted state regulation in the area of mortgage escrow accounts and loan disclosures. The court need not determine the full breadth of the term "operations of a federal Association" because there can be no dispute that such phrase extends at least to the regulation of mortgage escrow accounts and mortgage loan disclosures. *Fidelity Federal,* 458 U.S. at 167, 102 S.Ct. at 3029–3030. *Kaski v. First Federal Savings & Loan Association,* 72 Wis.2d 132, 240 N.W.2d 367 (1976).

*Implicit Preemption*

■ Even in the absence of § 545.2 it is apparent under the existing regulations and legislative history that the Wisconsin state law would be preempted because it stands as a barrier to the accomplishment of the objectives of the federal regulations. *Fidelity Federal,* 458 U.S. at 156, 102 S.Ct. at 3024. Specifically, in 1983 the Board deleted certain regulations which previously substantively regulated the use of escrow accounts. The current regulations, 12 C.F.R. §§ 545.32(b)(6) and 545.33(f)(3) regulate the disclosure of such escrow accounts. At the time these regulations were adopted and the substantive regulations were abandoned, the Board made the following comment:

The final information that must be disclosed under this first category concerns escrow payments. The former provisions 12 C.F.R. 545.8–3(b) (47 F.R. 36,-612), specified in detail the limitations applicable to such accounts, and largely restated the provisions of the Real Estate Settlement Procedures Act of 1974 (citations omitted) ("RESPA"). The Board proposed to simplify this regulation by only referencing the requirements of RESPA. In the final amendments the Board has decided to remove the substantive provisions pertaining to escrow accounts, *allowing such matters to be governed by the loan contract* and in their place require a more detailed disclosure about the accounts. Of course, associations will remain subject to the requirements of RESPA in addition to the Board's regulations and, if consistent with that statute, *may require escrow accounts to the extent agreed to in the loan contact.*

.    .    .    .    .

In light of this disclosure and the provisions of RESPA, the Board believes that the existing provisions on escrow accounts are no longer necessary and for that reason has deleted them.

48 Fed.Reg. 23,032 (1983) (emphasis added).

It was the Board's express purpose to permit the parties to negotiate the terms of an escrow agreement between themselves without intervention by substantive law. It would be a direct obstacle to the accomplishment of this flexibility if states were permitted to substantively regulate the provisions of such escrow arrangements.

Furthermore, the Board itself has repeatedly expressed its view that the interpretation now adopted by this court is the appropriate interpretation of its regulations. *See e.g.* Federal Home Loan Bank Board, Opinion of General Counsel, slip op. September 24, 1984. Such an interpretation by general counsel for the agency is persuasive evidence of the Board's intent to preempt state laws which seek to restrict the use of escrow accounts in residential real estate transactions. *Udall v.*

*Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

Although defendants have not addressed themselves to the non-escrow disclosure requirements of the law, it is also apparent that the regulations are intended to be exhaustive in their regulations of loan disclosures. 12 C.F.R. § 545.33(f). Under the structure of the regulations it must be presumed that the regulations foreclose further disclosure requirements by the states. The court, having concluded that the federal regulation in this area preempts state regulation of mortgage loan escrow accounts and loan disclosures, finds it unnecessary to address plaintiffs' argument that the Wisconsin legislation violates the contract clause of the United States Constitution.

Accordingly,

### ORDER

IT IS ORDERED that plaintiffs' motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that judgment shall be entered declaring that 1987 Wisconsin Act 359, §§ 1 through 6 are preempted by federal law and are therefore not applicable to federally chartered savings institutions subject to regulation by the Federal Home Loan Bank Board.

IT IS FURTHER ORDERED that judgment be entered enjoining defendants from enforcing such provisions against federally chartered savings institutions subject to regulation by the Federal Home Loan Bank Board.