LEE T. OLSEN *et al.*, Plaintiffs-Appellants, *v.* FINANCIAL FEDERAL
SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee.

First District (1st Division)    No. 80-930

Opinion filed March 29, 1982.

Drucker and Duax, Ltd., of Chicago, for appellants.

Schumacher, Jones, Vallely, Kelly & Olson, of Chicago, for appellee.

Office of the General Counsel, Federal Home Loan Bank Board, of Washington, D. C. (Milan C. Miskovsky, Ralph W. Christy, Harvey Simon, and Paul W. Grace, of counsel), for *amicus curiae* Federal Home Loan Bank Board.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs Lee and Nancy Olsen bring the instant appeal from an order of the circuit court of Cook County dismissing their complaint brought under the Illinois Mortgage Escrow Account Act (Ill. Rev. Stat. 1975, ch. 95, par. 101 *et seq.*) for injunctive relief and money damages for

the nonpayment of interest on sums placed with defendant, Financial Federal Savings and Loan (hereinafter Financial). The action was filed by plaintiffs personally and as representatives of the class of persons who obtained mortgages with defendant for the purchase of owner-occupied single-family residences after January 1, 1976, the effective date of the Illinois Mortgage Escrow Account Act, and were required to secure the payment of real estate taxes on their residences. The trial court dismissed the complaint. The pivotal issue raised in this appeal is whether a federally chartered savings and loan association may be required to comply with the provisions of a State statute concerning escrow accounts.

For the reasons stated herein, we affirm.

In their complaint, plaintiffs allege that in November 1978, they applied to Financial for a first mortgage loan in order to purchase a single-family residence which would serve as their principal residence. Pursuant to their application, Financial lent plaintiffs $94,880 for the purchase of the residence and a promissory note, mortgage and assignment of rents were executed to secure the loan. At the real estate closing, Financial required plaintiffs to deposit the sum of $1,661.15 into an escrow account to secure the payment of the general real estate taxes. Plaintiffs were also required to make monthly payments of one-twelfth of the estimated general real estate taxes which would be deposited by Financial into the escrow account. Financial denied plaintiffs' request to place the money in the escrow account into an interest-bearing savings account. The complaint also alleges that Financial did not make the requisite disclosures required by the Mortgage Escrow Account Act at the plaintiffs' closing.

As to the alleged "class," it was contended that Financial has failed to provide notices to any individuals who, like plaintiffs, obtained loans from it for the purchase of single-family owner occupied residences secured by first mortgages as required by the Mortgage Escrow Account Act. Nor did Financial allow these individuals to establish interest bearing accounts, in lieu of escrow accounts, as provided under the Act to secure the payment of real estate taxes on the mortgaged properties.

Plaintiffs' complaint sought *inter alia* an injunction requiring Financial to comply with the notice provisions of the Mortgage Escrow Account Act, an accounting on all money held in escrow by defendant after January 1, 1976, damages based on the amount of interest which the escrow funds could have earned calculated at the rate of interest Financial paid on its regular savings accounts during this period, and attorney fees and costs.

Financial filed a motion to dismiss plaintiffs' complaint alleging three separate bases. It was first contended that plaintiffs' complaint failed to sufficiently allege the grounds for a class action. It was next alleged that the provisions of the Mortgage Escrow Account Act were preempted

because the defendant was subject to the provisions of the Federal Home Loan Bank Act of 1932 (12 U.S.C. §1421 *et seq.* (1976)) and the Homeowners Loan Act of 1933 (12 U.S.C. §1461 *et seq.* (1976)) (hereinafter HOLA). Financial's final argument was that the complaint failed to sufficiently allege certain preconditions for the applicability of the Mortgage Escrow Account Act and that, therefore, the complaint failed to allege a cause of action under that Act. After extensive briefing, the trial court entered an order on March 4, 1980, dismissing the complaint upon two specific findings: (1) that the provisions of the Mortgage Escrow Account Act were not applicable to Financial by reason of the doctrine of Federal preemption as a matter of law; and (2) that the cause of action was not properly certifiable as a class action as a matter of law. It is from this order that plaintiffs now appeal.

Because we believe that the result we reach on the preemption question will control the issue of whether the cause of action was certifiable as a class, we address it first. The supremacy clause of the United States Constitution (U.S. Const., art. VI) provides:

> "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the Land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding."

This clause has been interpreted in a number of United States Supreme Court decisions as well as a number of Federal and State decisions. (*Ridgway v. Ridgway* (1981), 451 U.S. 905, 70 L. Ed. 2d 39, 102 S. Ct. 49; *Ray v. Atlantic Richfield Co.* (1978), 435 U.S. 151, 55 L. Ed. 2d 179, 98 S. Ct. 988; *First Federal Savings & Loan Association v. Greenwald* (1st Cir. 1979), 591 F.2d 417; *Glen Ellyn Savings & Loan Association v. Tsoumas* (1978), 71 Ill. 2d 493, 377 N.E.2d 1.) These decisions clearly establish the power of Congress to preempt any legislative field over which it has jurisdiction. (*De Canas v. Bica* (1976), 424 U.S. 351, 47 L. Ed. 2d 43, 96 S. Ct. 933; *Campbell v. Hussey* (1961), 368 U.S. 297, 7 L. Ed. 2d 299, 82 S. Ct. 327; *Parker v. Brown* (1942), 317 U.S. 341, 87 L. Ed. 315, 63 S. Ct. 307.) However, preemption is established only where a "clear and manifest Purpose of Congress" exists to foreclose a particular field to State legislations. (*Ray v. Atlantic Richfield Co.*; *Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 51 L. Ed. 2d 604, 97 S. Ct. 1305; *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 91 L. Ed. 1447, 67 S. Ct. 1146.) In *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1152, the Supreme Court explained that congressional purpose:

> "* * * may be evidenced in several ways. The scheme of federal regulation may be so persuasive as to make reasonable the infer-

ence that Congress left no room for the States to supplement it. [Citations.] Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws of the same subject. [Citation.] Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. [Citations.]"

Where Congress has not entirely "occupied a field" to foreclose State legislation on a particular field, the supremacy clause may also preempt State regulation if the State statute is in actual conflict with Federal legislation. An actual conflict between a Federal statute and a State statute exists where compliance with both is a physical impossibility (*Florida Lime & Avocado Growers, Inc. v. Paul* (1963), 373 U.S. 132, 10 L. Ed. 2d 248, 83 S. Ct. 1210), or where compliance with the State statute would act as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Ray v. Atlantic Richfield Co.*; *Jones v. Rath Packing Co.*; *Hines v. Davidowitz* (1941), 312 U.S. 52, 85 L. Ed. 581, 61 S. Ct. 399.

The parties to the present appeal do not refute the general principles enunciated by these decisions; rather they argue whether Congress has evidenced its intent to totally occupy the field of Federal savings and loan associations by enacting the Home Owners' Loan Act of 1933 or in the alternative whether the provisions of the Mortgage Escrow Account Act are in actual conflict with Federal regulations. In that we conclude that certain of the provisions of the Mortgage Escrow Account Act do actually conflict with Federal legislation passed concerning this area, we find it unnecessary to determine whether Congress has totally occupied the field of Federal savings and loan association regulation so that any State legislation in this field would be deemed preempted.

Plaintiffs argue that adoption of section 545.8—3(c) by the Federal Homeowners Bank Board (hereinafter Board) evidenced a Congressional intent to permit States to regulate in the area of Federal savings and loan association and that there is no conflict between rules promulgated by the Board and the Mortgage Escrow Account Act.

Section 545.8—3(c) provides in pertinent part:

"(c) Payment of interest on escrow accounts (1) An association shall pay interest on escrow accounts maintained in connection with a loan, if:

\* \* \*

(iii) A specific statutory provision(s) of the State in which the security property is located generally requires State-chartered savings and loan associations, mutual savings bank, and similar institutions to pay such interest.

* * *

(3) Unless obligated by contract, a Federal association shall have no obligation, other than under this paragraph (c) to pay interest on escrow accounts." 12 C.F.R. §545.8—3(c).

Plaintiffs urge that the Mortgage Escrow Account Act is a State statute which requires State chartered savings and loan associations to pay interest on escrow accounts and, as such, codifies the obligation set forth in Federal Regulation 545.8—3(c)(iii), which explicitly allows States to regulate escrow accounts in Federal savings and loan associations. We disagree. The Mortgage Escrow Account Act does not, as appellants contend, provide for interest for escrow accounts for State-chartered savings and loan associations, mutual savings banks, and similar intitutions. The Mortgage Escrow Account Act makes no reference to interest bearing escrow accounts; its only provision as to interest-bearing accounts, section 6, provides for interest-bearing pledged savings accounts to secure the payment of anticipated taxes. (Ill. Rev. Stat. 1975, ch. 95, par. 106.) Moreover, section 6 does not require State savings and loan associations to establish interest bearing pledged savings accounts but gives the borrower the option to have such an account maintained. Accordingly, the Mortgage Escrow Account Act is not the type of specific statutory provision which is envisioned by section 545.8—3(c).

Moreover, this section does not suggest that a State may enact legislation requiring Federal savings and loan associations to pay interest on escrow accounts. Rather, it places an obligation on Federal savings and loan associations to pay interest on escrow accounts where a State statute requires State savings and loan associations to pay interest on escrow accounts. This obligation, "requiring Federal [savings and loan] associations, solely as a matter of Federal law, under certain circumstances and subject to certain limitations to pay interest on funds held by them in escrow accounts," exists on the basis of section 545.8(c), as promulgated under HOLA. See Preamble to Resolution No. 75—415, 40 Fed. Reg. 20,942 (1975).

Nor can we accept plaintiffs' argument that the Mortgage Escrow Account Act and Federal regulations concerning interest on escrow accounts enacted by the Board pursuant to HOLA are not in actual conflict. The Board has promulgated regulations which allow installment loans to be made under certain terms and conditions (12 C.F.R. §§545.6—2, 545.8—3.) Under section 545.6—2 Federal savings and loan associations may make 30-year loans not exceeding 80% of the value of the security property. That section also provides for loans exceeding 80% of the value of the security but not exceeding 90% of the value of the security if the loan contract requires payment by the borrower of one-twelfth of the esti-

mated annual taxes and assessments on the security property to be paid monthly, in advance, to the association. Accordingly, under this regulation of the Board, a 30-year mortgage may be obtained without the requirement of an escrow account for mortgages under 80% of the value of the security property. However, loans for greater than 80% of the value of the security property may only be obtained if escrow accounts are established to protect the lender's interest in the property.

Section 545.8—3(a), also promulgated by the Board, provides that the loan instruments of a Federal savings and loan association shall provide "full protection" with respect to the insurance, taxes, assessments, governmental levies, maintenance and repairs of the secured property. (12 C.F.R. §545.8—3(a).) Additionally, section 545.8—3(b) provides that an association may require all or a part of these charges to be paid in advance and deposited into an escrow account along with interest and principal payments so that the association may pay these charges when due for the protection of its interest in the security property. 12 C.F.R. §545.8—3(b).

Section 545.8—3(c) pertains specifically to payment of interest on said escrow accounts. It provides:

"(c) Payment of interest on escrow accounts.

(1) An association shall pay interest on an escrow account maintained in connection with a loan, if:

(i) The loan is on the security of a single-family dwelling occupied or to be occupied by the borrower;

(ii) The loan was made after June 15, 1975, and no bona fide loan commitment was made before that date; and

(iii) A specific statutory provision(s) of the State in which the security property is located generally requires State-chartered savings and loan associations, mutual savings banks, and similar institutions to pay such interest.

(2) The interest rate shall at least equal the rate required for such State-chartered institutions but shall not exceed the rate of the Federal association pays on regular accounts.

(3) Unless obligated by contract, a Federal association shall have no obligation, other than under this paragraph (c), to pay interest on escrow accounts." 12 C.F.R. §545.8—3(c).

In contrast, the Illinois Mortgage Escrow Account Act provides, in pertinent part, that a borrower may, in lieu of establishing an escrow account, "pledge an interest bearing savings account with the mortgage lender in an amount sufficient to secure the payment of anticipated taxes." (Ill. Rev. Stat. 1975, par. 95, par. 106.) Under the Act, a borrower may also terminate an escrow account, established incident to the original

loan for the deposit of monthly advance payments for interest, taxes, principal and other charges, if the mortgage is reduced to 65% of its original amount. Ill. Rev. Stat. 1975, ch. 95, par. 105.

We believe that these provisions are, contrary to plaintiffs' assertions, in actual conflict with the aforementioned Federal regulations concerning escrow accounts in several respects. First, if the Mortgage Escrow Account Act were applied to Federal savings and loan associations, these associations would have to allow a borrower to exercise his options under the Act to maintain separate interest bearing pledged accounts in lieu of escrow accounts. Such an obligation is in conflict with sections 545.8—3 and 545.6—2, which provide that the only federally authorized method to secure payment of taxes and assessments is the establishment of an escrow account. While appellants urge us to find that the establishment of an escrow account and the establishment of a pledged savings account is a theoretically indistinguishable act, we do not agree.

Federal regulations make distinct references to escrow accounts and pledged savings accounts evidencing the Board's position that these accounts are viewed as totally distinct methods for securing the payments of charges incident to the mortgage. (Compare 12 C.F.R. §545.6—2(a)(1)-(5) and 12 C.F.R. §545.7.) Similarly, the Mortgage Escrow Account Act distinguishes and distinctly treats escrow accounts and pledged savings accounts. (Compare Ill. Rev. Stat. 1975, ch. 95, pars. 102(a) and 106.) Moreover, while plaintiffs might correctly contend that both escrow accounts and pledged savings accounts purportedly accomplish the same general goal, security of the lender's interest in the security property and payment of all charges incident to the ownership of the property, the devices as already noted, are distinct. In an escrow account, the lender has possession of the property of the borrower to be used for a specific purpose to benefit the borrower. In contract, in a pledged savings account the borrower maintains ownership of the account.

Section 545.8—3 provides that Federal associations shall have "full protection" with regard to insurance, taxes and other charges and that loan instruments shall include provisions to provide such full coverage. In order to clarify what the Board envisioned by "full protection," regulations were promulgated which set forth the requisite contract terms and conditions to be used in Federal savings and loan associations loan documents. These regulations provide for escrow accounts not pledged savings accounts. (12 C.F.R. §545.6—2(a)(2)(iv); 12 C.F.R. §545.8—3(b).) Indeed, for loans which exceed 80% of the value of the security property, regulations mandate the maintenance of escrow accounts. Enforcement of the Mortgage Escrow Account Act against Federal savings and loan associations would not afford the associations the "full protection" mandated by the regulations. Under the Act the lender would have the option

of using a pledged savings account in lieu of an escrow account and of terminating an escrow account after the "mortgage is reduced to 65% of its original amount by payments of the borrower." Ill. Rev. Stat. 1975, ch. 95, par. 105.

■■ Indeed, as the subject of escrow accounts to secure payment of property taxes on mortgage property is specifically addressed by regulations promulgated by the Board in its exercise of its Congressional mandate to provide for the operation of Federal savings and loan associations, this area is preempted (*Meyers v. Beverly Hills Federal Savings & Loan Ass'n* (9th Cir. 1974), 499 F.2d 1145; *Glendale Federal Savings & Loan Ass'n v. Fox* (C.D. Cal. 1978), 459 F. Supp. 903; *Greenwald v. First Federal Savings & Loan Association* (D. Mass. 1978), 446 F. Supp. 620), and any attempt by a State to regulate which potentially conflicts with Federal legislation or regulations or with their purpose or that results in a lack of uniformity in the internal management or lending practices of a Federal savings and loan association is subordinated to Federal law. The Board, by promulgating regulations on the use of escrow accounts by Federal savings and loan associations, attempted to establish national uniform policies and standards of lending practices which it believed to be the "best practices" for local and Federal savings and loan institutions. To allow a State to thwart the intent of Congress to achieve a national policy in those areas where it has chosen to regulate would be to totally ignore the supremacy of the Federal government and would denigrate the supremacy clause.

■■ Based on the foregoing analysis, we hold that the trial court below properly dismissed the plaintiffs' action based on its finding that the provisions of the Illinois Mortgage Escrow Account Act are not applicable to Federal savings and loan associations because of the constitutional doctrine of Federal preemption. In so concluding, we find it unnecessary to address the issue of whether the trial court properly refused to certify the "class" in this action. As no cause of action existed under the Illinois Mortgage Escrow Account Act, no action in any form, including a class action, could be brought.

For the foregoing reasons, the order of the circuit court of Cook County dismissing the plaintiffs' complaint is affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.