DAVID SPITZ *et al.*, Plaintiffs-Appellants, v. GOLDOME REALTY CREDIT CORPORATION, Defendant-Appellee.

First District (5th Division)   No. 1—88—0230

Opinion filed February 15, 1991.—Rehearing denied March 27, 1991.

Alvin W. Block, Russell C. Green, and Jinhee Wilde, all of Block, Levy & Associates, of Chicago, for appellants.

Baker & McKenzie, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs, David and Barbara Spitz, appeal from an order of the circuit court of Cook County, chancery division, dismissing their class action complaint. No class had yet been certified. Plaintiffs alleged in their complaint that defendant, Goldome Realty Credit Corporation (Goldome), violated the Illinois Mortgage Escrow Account Act (IMEAA) (Ill. Rev. Stat. 1985, ch. 17, par. 4901 *et seq.*), by failing to notify plaintiffs in writing of their rights under the escrow provisions of the IMEAA. Defendant filed a motion to dismiss the complaint, as-

serting, among other things, that plaintiffs' claim is barred under the doctrine of Federal preemption pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619). The court granted the motion on that ground, and plaintiffs appeal. For the following reasons, we reverse and remand.

FACTS

Defendant is a wholly owned subsidiary service corporation of Goldome Secondary Markets, Inc. Goldome Secondary Markets, Inc., is itself a wholly owned subsidiary of Goldome Federal Savings Bank (Goldome Federal). At all times relevant to the case at bar, Goldome Federal was a chartered Federal savings institution subject to regulation by the Federal Home Loan Bank Board (Bank Board).

Plaintiffs obtained a mortgage loan from defendant for the purchase of a single-family residence. As a condition of the mortgage loan, defendant required plaintiffs to establish a tax escrow account. Plaintiffs then brought a class action lawsuit on their own behalf and on behalf of all other persons similarly situated, alleging that defendant violated section 11 of the IMEAA by failing to give plaintiffs and the other members of the class notice in writing of the IMEAA's escrow provisions. These provisions allow the borrower to pledge an interest-bearing savings account in lieu of establishing an escrow account. Ill. Rev. Stat. 1985, ch. 17, par. 4906.

In its motion to dismiss the complaint, defendant asserted that because it was a wholly owned subsidiary of Goldome Federal, the Homeowners' Loan Act of 1933 (HOLA), (12 U.S.C. §1461 *et seq.* (1987)), and the regulations promulgated thereunder (12 C.F.R. §545 *et seq.* (1987)), preempted the IMEAA under the supremacy clause of the United States Constitution. The trial court granted defendant's motion, holding that the Bank Board's plenary power to regulate federally chartered savings associations extends to subsidiary service corporations of such associations. Moreover, the trial court said, "the regulation of mortgage escrow or escrowlike accounts is exclusively federal."

OPINION

Plaintiffs contend the trial court erred in dismissing the complaint, urging that: (1) although a State cannot regulate the "operations" of a federally chartered savings association, the activities of its subsidiary service corporation, including its home mortgage lending services, are not "operations" of the parent association so as to be precluded from State regulation; (2) Congress and the Bank Board

have not manifested any intent to subject the entire field of service corporations to exclusive Federal regulation; and (3) there is no actual conflict between the IMEAA as it applies to service corporations and the HOLA.

Defendant argues that because Federal preemption of State regulation of federally chartered savings associations extends to the "operations" of those associations and a service corporation's home mortgage activities are "operations" of its parent association, such activities are therefore preempted from State regulation. Defendant also contends that the Bank Board has regulated service corporations to such an extent so as to preclude any State regulation in that field. Furthermore, defendant asserts, there is a direct conflict between the HOLA and the IMEAA, so the Federal statute must control.

■ A reviewing court, on appeal from an order granting a motion to dismiss, must determine whether the allegations of the complaint interpreted in the light most favorable to the plaintiff are sufficient to set forth a cause of action upon which relief can be granted. Although the granting of a motion to dismiss is within the discretion of the trial court, the reviewing court can exercise its own judgment in determining if such a motion should be entertained. *Harris Trust & Savings Bank v. Chicago Title & Trust Co.* (1980), 84 Ill. App. 3d 280, 282-83, 405 N.E.2d 411, 414.

■ The supremacy clause of the United States Constitution provides "[the] Constitution, and the Laws of the United States which shall be made in Pursuance thereof *** shall be the supreme Law of the Land; *** any thing in the Constitution or Laws of any State to the Contrary notwithstanding." (U.S. Const., art. VI.) Under this clause, Congress has the power to preempt any legislative field over which it has jurisdiction. (*DeCanas v. Bica* (1976), 424 U.S. 351, 47 L. Ed. 2d 43, 96 S. Ct. 933.) Preemption exists only where there is a "clear and manifest purpose of Congress" to foreclose a particular field to State legislation. (*Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 51 L. Ed. 2d 604, 97 S. Ct. 1305.) That purpose may be expressly stated or may be inferred where "the scheme of federal regulation is sufficiently comprehensive" to make reasonable the assumption that Congress has left no room for supplementary State regulation. (*California Federal Savings & Loan Association v. Guerra* (1987), 479 U.S. 272, 280-81, 93 L. Ed. 2d 613, 623, 107 S. Ct. 683, 689.) Also, if the Federal legislation touches a field in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws" in the same field,

preemption may be inferred. *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1152.

■ Even if Congress has not foreclosed a legislative field from State regulation, preemption exists if there is an actual conflict between a State statute and Federal legislation. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility" (*Florida Lime & Avocado Growers, Inc. v. Paul* (1963), 373 U.S. 132, 142-43, 10 L. Ed. 2d 248, 257, 83 S. Ct. 1210, 1217, *rehearing denied* (1963), 374 U.S. 858, 10 L. Ed. 2d 1082, 83 S. Ct. 1861), or where the State statute acts as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*Hines v. Davidowitz* (1941), 312 U.S. 52, 67-68, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404). However, when Federal law preempts State law, it does so only to the extent necessary to protect the achievement of Federal goals. *Merrill, Lynch, Pierce, Fenner, & Smith, Inc. v. Ware* (1973), 414 U.S. 117, 127, 38 L. Ed. 2d 348, 359, 94 S. Ct. 383, 389.

There is no question that the doctrine of preemption applies with respect to the parent corporation (*Olsen v. Financial Federal Savings and Loan Association* (1982), 105 Ill. App. 3d 364, 434 N.E.2d 406); nor do the parties dispute that there is exclusive Federal regulation of federally chartered savings associations and that the Bank Board has the exclusive and plenary power to "regulate all aspects of the operations of Federal associations." (12 C.F.R. §545.2 (1987).) At issue is whether the preemption that applies to the parent Federal savings associations is applicable to the State-chartered subsidiary service corporation.

Defendant asserts that because it originates home mortgage loans, it relates to the "operations" of its parent association and should be subject to exclusive Federal regulation. We disagree. While defendant does provide home mortgage loans, an activity routinely conducted by Federal savings associations, it is not "irrelevant," as defendant contends, whether the loans are originated by the service corporation or its parent association.

Service corporations are required by Federal regulation to be separate entities from their parent associations. The Bank Board has specifically provided that the two entities should operate so that the parent association "does not dominate the service corporation to the extent that the latter is treated as a mere department of the former." (12 C.F.R. §570.10(a)(5) (1988).) As the parties acknowledge, the very reason federally chartered savings associations establish service corporations is because these subsidiaries are not subject to the same ex-

tensive Federal regulation as their parents. If it truly were irrelevant as to which entity originates a home mortgage loan, as defendant contends, service corporations would function merely as lending services departments of their parent associations. Such a result would be inconsistent with both the Bank Board's express intention to keep the two entities separate, as well as the parent association's reasons for creating separate service corporations.

■ Defendant relies on *Community Title Co. v. Roosevelt Federal Savings & Loan Association* (Mo. App. 1984), 670 S.W.2d 895, in which the plaintiffs sought injunctive relief against a federally chartered savings and loan association. In denying the relief, the court said that "lending practices are clearly within the 'operations' of a savings and loan." (*Community Title*, 670 S.W.2d at 903 n.6.) However, that case is inapplicable to the case at bar. Here, it is the lending practices of a service corporation, not a federally chartered savings and loan, that are at issue. Because such practices, including the service corporation's home mortgage activities, should not be considered to be the "operations" of the parent association, State regulation of service corporations should not be preempted on that basis.

Defendant contends that, even if its lending activities are not "operations" of Goldome Federal, the Bank Board has regulated service corporations to such an extent so as to preempt State regulation in that entire field. For example, regulations promulgated under the HOLA allow service corporations to engage in "such activities reasonably related to the activities of Federal savings associations as the [Bank Board] may approve." (12 C.F.R. §545.74(c) (1990).) The majority of common stock of a service corporation must be owned by one or more Federal savings associations. (12 C.F.R. §561.45 (1990).) In addition, the Bank Board has the power to limit service corporation activities for supervisory reasons (12 C.F.R. §545.74(b)(iv) (1990)), and to govern the investment of parent associations in their subsidiary service corporations (12 C.F.R. §563.98 (1990)).

■ While service corporations are subject to Federal regulation in other areas as well as those described above, neither Congress nor the Bank Board has manifested any intention to preempt the entire field of service corporation activities. Although Congress has set limitations on how federally chartered associations may invest in service corporations (12 U.S.C. §1464(c)(4)(B) (1988)), no Federal statute exists specifically precluding State regulation of service corporations. In fact, service corporations are State chartered and must be organized under the laws of the State in which their parent association's home office is located. (12 U.S.C. §1464(c)(4)(B) (1988).) Moreover, while the

Bank Board does regulate service corporations in some areas, such regulation is selective and sporadic. For example, while some of the Federal regulations specifically include service corporations in their definition of "association" (*e.g.*, 12 U.S.C. §1464(d)(2)(A) (1988) (which gives the Bank Board power to guard against unsafe or unsound practices by associations)), others are silent as to whether "association" includes service corporations. Therefore, it does not appear that the Bank Board, based on the explicit content of its regulations or on its pattern of regulatory activity, has indicated any intent to preempt any State regulation of service corporations.

█ This position is consistent with that taken by the Bank Board in its opinion letters on the subject. While opinion letters from administrative agencies are not binding authority, they may be persuasive (*Skidmore v. Swift & Co.* (1944), 323 U.S. 134, 140, 89 L. Ed. 124, 129, 65 S. Ct. 161, 164), and may be given deference where the issue is not governed by clear expressions in the statute. *Securities Industry Association v. Federal Home Loan Bank Board* (1984), 588 F. Supp. 749, 757.

In a letter dated August 13, 1985, General Counsel to the Bank Board stated that the Bank Board did not have any position on the applicability of the preemption regulation (12 C.F.R. §545.2 (1990)) to service corporations. (FHLBB Opinion Letter, August 13, 1985.) This indicates that the Bank Board had no affirmative interest in excluding service corporations from any State regulation. That lack of interest was explicitly articulated in another letter from General Counsel dated September 16, 1986, concerning a Wisconsin law setting forth notice of relationship requirements. General Counsel said that while the Wisconsin law was preempted by Federal law as it related to federally chartered savings associations, it would apply to transactions between subsidiaries or affiliates that are not Federal associations. FHLBB Opinion Letter, September 16, 1986.

In an opinion letter dated November 21, 1988, Deputy General Counsel addressed in depth the very question posed here. In that letter, the Bank Board disclaimed any intention to preempt any State regulation of service corporations. Deputy General Counsel said that "neither Congress nor the Bank Board has expressed an intent to preempt state law by occupying the field with regard to the service corporations of federal associations. In this regard, it is contemplated that there would be a system of dual federal and state regulation." (FHLBB Opinion Letter, November 21, 1988.) General Counsel then went on to say that, absent a direct conflict, Federal regulation will not preempt State law with respect to service corporations.

■ It is therefore apparent from the Bank Board's opinion letters, as well as from the scope and pattern of its regulatory activity, that it did not intend to preempt any State regulation of service corporations. As previously noted, neither Congress nor the Bank Board has attempted to set forth a comprehensive regulatory scheme for service corporations as they did for their federally chartered parent associations. Recognizing the lack of such a comprehensive scheme, it is difficult to conceive that Congress and the Bank Board would only regulate the home mortgage activities of service corporations in selected areas if they did not intend to subject these entities to additional State regulation. An intent to preempt without providing a comprehensive regulatory scheme could lead to the intolerable result of permitting service corporations to perform lending activities, which are traditionally highly regulated, unfettered by *any* regulation. While States may not expand upon the permitted activities of service corporations (see 12 C.F.R. §545.74(c) (1990)), it is clear that Congress and the Bank Board did not intend to preclude the States from the power to regulate how those permitted activities may be performed. Therefore, we find that subsidiary service corporations of Federal savings associations are subject to State regulation, as long as that regulation does not conflict with existing Federal law.

In contending that an actual conflict exists between the HOLA and the IMEAA, defendant relies on *Olsen v. Financial Federal Savings & Loan Association* (1982), 105 Ill. App. 3d 364, 434 N.E.2d 406. In *Olsen*, the court held that the escrow provisions of the IMEAA were not applicable to Federal savings associations because they conflicted with Federal regulations and were therefore preempted. While the Federal regulation that preempted the IMEAA in *Olsen* has been repealed, a similar provision was passed in its stead. 12 C.F.R. §545.32(b)(6) (1990) provides:

> "*Escrow accounts. A Federal savings association* may require that all or any part of the estimated annual taxes, assessments, insurance premiums, and other charges on any loan be paid in advance to the *Federal savings association*, in addition to interest and principal payments on the loan, to enable the *Federal savings association* to pay such charges as they become due, consistent with the Real Estate Settlement Procedures Act of 1974 ('RESPA') [citation]." (Emphasis added.)

If an association requires escrow accounts, it must disclose to the borrower the purpose of requiring the account, how the amount of escrow payments will be established, and the rights of the association if

the borrower fails to make the escrow payments. 12 C.F.R. §545.33(f)(3) (1990).

■ The IMEAA allows borrowers to pledge an interest-bearing savings account with the mortgage lender in lieu of establishing an escrow account. (Ill. Rev. Stat. 1989, ch. 17, par. 4906.) Defendant contends that because this provision conflicts with Federal escrow requirements, it should therefore be preempted as in *Olsen*. We disagree. In *Olsen*, the IMEAA was held inapplicable to Federal savings associations, not their subsidiary service corporations. This is fully consistent with section 545.32(b)(6), which applies specifically to Federal savings associations. However, since defendant is not a Federal savings association, but merely a subsidiary of one, it is not within the intended scope of section 545.32(b)(6). Therefore, because we hold that the escrow provisions of the HOLA are inapplicable to service corporations, we need not address whether an actual conflict exists between the HOLA and the IMEAA as it relates to those entities.

For the reasons set forth, we reverse the order granting the motion to dismiss and remand for further proceedings.

Order reversed.

MURRAY and McNULTY, JJ., concur.